## Union Light, Heat & Power Co. v. Louisville & N. R. Co. et al. (two cases).

(Decided Feb. 15, 1935.)

GALVIN & TRACY for appellant.

ASHBY M. WARREN, ROUSE & PRICE, STEPHENS L. BLAKELY, SIDNEY SMITH and RALPH RICH for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

These two actions were filed below jointly against appellees, the Louisville & Nashville Railroad Company and the city of Covington, by the appellant, the Union Light, Heat & Power Company. By agreement, the appeals were consolidated in this court. The lower

court sustained demurrers to the petitions in each case, and the appellant prosecutes these appeals from the judgment dismissing its petitions.

The cases arise out of the circumstances surrounding the elimination of certain grade crossings in the city of Covington. Appellant asks for judgment in the sum of $623.77 in one case, covering the expenses of relocating and rearranging its gas and electric lines at Caroline avenue in Covington, and for judgment in the sum of $4,033.99 in the other case, covering similar expenses at Nineteenth street and at Fortieth street in Covington.

Appellant asserts a right to recover its costs in connection with the grade elimination (1) because of the provisions of the ordinances of the city of Covington embraced in, and made part of, the agreement between the city and the railroad company; and (2) because of the provisions of the Grade Crossing Elimination Act (Ky. Stats. sec. 3104a-1 et seq.).

The city enacted three ordinances relating to the crossings involved, and provided in each that the railroad company "shall within thirty days after this ordinance becomes effective, accept the same in writing, and upon the acceptance of the provisions of this ordinance by the said Louisville & Nashville Railroad Company, the same shall constitute and thereby become a binding contract between the Louisville & Nashville Railroad Company and the City of Covington, Ky."

Section 5 of the Caroline avenue ordinance is typical. So far as material here, it provides:

"In consideration of the City of Covington closing Southern Ave. and Graff St. between the points mentioned in section 3 of this ordinance, the Louisville & Nashville Railroad Company shall pay all the costs and expenses thereof whatsoever and any and all damage incident thereto or resulting therefrom, if any, resulting to the property of any person or persons, firm or corporation, by reason of, or in any manner resulting from the closing of said portion of Southern Ave. and Graff St. at the points provided for in this ordinance.

"The Louisville & Nashville Railroad Co. shall pay all the cost and expense of constructing the

said underpass and approaches thereto, and the surfacing of same, including the sidewalks, including any and all damages incident to or resulting from the construction of said underpass, if any, that may be done to the property of any person or persons, firm or corporation by reason of the construction of such underpass and approaches thereto, and the closing of 35th St. at said point, and the establishment of the grade at Caroline Ave. between the points above mentioned. * * *"

Accepting this provision of the ordinance, together with the similar expressions in other parts thereof, as a contract between the city and railroad company, we are confronted immediately with the question whether or not the expense to which appellant was put in conforming its lines to the new grade was such damage as was contemplated by the city and railroad company in entering into the contract. In other words, is this a contract for the benefit of appellant?

Clearly, the contract was intended to benefit such third persons as suffered damages compensable under section 242 of the Constitution of Kentucky. Chesapeake & Ohio Railway Co. v. Wadsworth Electric Manufacturing Co., 234 Ky. 645, 29 S. W. (2d) 650. But the claim asserted by appellant in this case is not within the provisions of section 242. Louisville Gas & Electric Co. v. Commissioners of Sewerage, 236 Ky. 376, 33 S. W. (2d) 344; Louisville City Railway Co. v. City of Louisville, 8 Bush, 415.

In Elliott on Contracts, vol. 2, sec. 1413, that author says:

"It is a rule of practically universal application that there must exist on the part of the original parties to the contract a clear intent to benefit the third party, although a majority of the courts do not go so far as to hold with Connecticut that the contract must be for the sole and exclusive benefit of the third party. Many of the cases in addition to holding that there must be an intent to benefit the third party, place a further limitation on the rule to the effect that the promisee must owe some obligation to the third party."

See, also, 6 R. C. L. 881, sec. 270 et seq.

Accepting the premise that the contract between

the railroad company and the city was for the benefit of third persons, it is still clear, we think, that the third persons to whom it refers are those to whom a *duty* to compensate was owing, and not to concerns such as appellant, who occupy the public streets at the risk of changes required by the public convenience or necessity.

Appellant recognizes the rule announced by Elliott, above, but says that the provisions of section 3104a-3 of the Statutes, being a part of the Grade Crossing Elimination Act, create a *duty* on behalf of the railroad company and the city to compensate for the expenses incurred. So far as pertinent to this case, section 3104a-3 provides:

> "The cost of all work incident to or occasioned by the elimination of the grade crossings and the construction of a substituted crossing, * * * including the costs incurred in preparing the plans and specifications and supervising said improvement, the acquisition of property necessary therefor, * * * accommodations for street railways and interurban railway companies and other public utilities, and damages paid to abutting property owners, shall be paid in the proportion of sixty-five per cent [65%] thereof by the railroad company or companies affected and thirty-five per cent [35%] thereof by the city; * * * provided, however, that the said costs shall not include the cost of ties, ballast, rails and other track material used for railroad tracks or street or interurban railway tracks and equipment necessary for the operation of said railroads or street or interurban railways, and the expense of relaying and reconstructing and installing same, all of which costs shall be borne exclusively by the company whose tracks or equipment are so relaid, reconstructed or installed; * * * and provided, further, that where provision is made in the plan for a grade elimination for the track or tracks of any street railway or interurban railway company, the company so owning such tracks shall pay into the city treasury forty per cent [40%] of the amount paid out or expended by the city. * * *"

The Grade Crossing Elimination Act plainly expresses a public policy to abolish crossings at grade with steam railroads, in the interest of *the public safety and welfare*. The General Assembly must have rea-

lized that the entire expense should not, in good conscience, be saddled upon the railroads alone; that such a burden might be too great for the railroads to bear. It placed a part of the burden upon the taxpaying public, realizing that the ultimate object was for the public safety, convenience, and necessity. If we are to adopt the construction of the Grade Crossing Elimination Act contended for by appellant, we must imply that the Legislature intended that the public, at whose will or convenience appellant occupies the streets, must pay a part of appellant's expense in relocating and rearranging its lines. We think that no such intention is to be implied from the language of the act, and that, had such an intention existed, it would have been expressed in more direct language than has been used.

The Court of Appeals of New York had this question before it in the case of Transit Commission v. Long Island Railroad Co., 253 N. Y. 345, 171 N. E. 565, 568. In considering the construction to be given the New York Grade Crossing Elimination Act, the court said:

"The aim and object of the Elimination Act, and the methods used to accomplish its purpose, indicate that there was no intention to relieve public service corporations having franchises in the highways from their ordinary obligations. The general rule is and always has been, as we have above stated, that these corporations must relocate their properties in the highway when public necessity requires. The grade crossing of steam railroads have created an urgent necessity to do something for the safety of the traveling public. Not for the benefit of the railroads, but for the benefit of the people of the state, these grade crossings must go, and, while the result may be slow in attainment, the work goes steadily on. Cost and engineering problems have to be faced; the former, the people have solved by assuming half the cost, and providing funds which may be borrowed for immediate use; the engineering problems are passed to public officials, known as the Transit Commission, under whose approval and supervision all plans are carried out. The reasonable construction of the Elimination Act under these circumstances is to assume that the people are not to be burdened with any

heavier expense than necessity requires, and that to relieve the public service corporations having franchises in the streets of their common-law liabilities and to pass them over to the taxpayer can only be accomplished by the express direction of the Legislature.''

Appellant contends that the express provision in section 3104a-3 for the payment of the cost of ties, ballast, etc., by the railroad or street or interurban railways affected, excludes the idea that any other cost was to be paid by the persons concerned; that the maxim, *"expressio unius est exclusio alterius,"* should be applied.

The maxim is a rule of construction, and not a rule of substantive law. Jefferson County v. Gray, 198 Ky. 600, 249 S. W. 771; Western & Southern Life Ins. Co. v. Weber, 183 Ky. 32, 209 S. W. 716. As said by the Supreme Court of the United States in Ford v. United States, 273 U. S. 593, 611, 47 S. Ct. 531, 537, 71 L. Ed. 793:

"This maxim properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment.''

We do not think that the express mention of street and interurban railways in the statute is in ''strong contrast'' to appellant. These companies were charged with a portion of the *general* cost of construction, in addition to the particular costs mentioned in the statute. Their position was peculiarly different from that of appellant. Appellant is required to pay only for rearranging and relocating its own lines. It does not even have to pay for the cost of ''accommodations'' made in the structure to handle its lines. We think, as did the Court of Appeals of New York in Transit Commission v. Long Island Railroad Co., supra, that an express direction of the Legislature would be required before appellant could recover the expenses here involved.

It is undoubtedly true that the elimination of grade crossings is a matter with which appellant is not con-

cerned other than as a member of the public. It is likewise true that the elimination of grade crossings is a matter of public convenience and necessity. Such rights as appellant has in the streets are subordinate to the paramount rights of the public, and are held by appellant with full knowledge of these rules. Its expenses, here incurred, are but an incident to the privilege enjoyed.

Judgment affirmed.