## Laurel County v. Hubbard.
(Decided March 20, 1936).

C. R. LUKER and G. S. CRAWFORD for appellant.

WILLIAM LEWIS and RAY C. LEWIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In 1934 the state highway commissoin undertook to and did concrete the public road between London and Barbourville, Ky., along the general route of a previously established highway, which the brief of counsel says was established by a private act of an early Kentucky Legislature enacted in 1794, but which was not introduced at the trial of this case, nor have we been able to locate it. Appellee and plaintiff below, C. E. Hubbard, at and prior to the times herein involved, owned and occupied a residence located about 200 feet south of the southern corporate limits of London. The lot fronted the anciently located public road 115 feet, and the concreting in front of it was upon the old right of way which the preponderance of the proof in this case shows was 60 feet wide. Prior to the concreting, which was the first establishment of a grade for that road, plaintiff constructed a small garage on the front portion of what he claimed to be his lot. Opposite it, and at a distance of about 3 feet from it, there was an excavation (the garage being located at the top of a small elevation) of about 3 feet which would make an incline from the door of the garage to the bottom of the excavation of about 45 degrees, and, perhaps, too steep for use. Some time prior to the excavating for the concreted highway in front of plaintiff's lot he constructed a sanitary buried sewer running from his residence across the old highway, so as to empty on its far side in order to get it as far as possible from his residence. It was not embedded as deeply as the excavation extended, and in making it the sewer pipe was removed by the contractor.

After the road was finished plaintiff filed this action against the contractor, and the county of Laurel, to recover alleged damages to his lot for what he claims resulted from making the improvement, and,

as we interpret the proof, it failed, even remotely, to establish any damages, except the interference with plaintiff's ingress and egress to and from his garage as above indicated, and the destruction of his sanitary sewer pipe that he had built under the surface of the old road across the right of way. His access to other parts of his lot was furnished by an alley along its side, and which was not materially interfered with.

Defendants in their separate answers denied the material averments of the petition, and in a separate paragraph pleaded that plaintiff's garage was located within the old right of way, the entire building being, as they averred, over the line between plaintiff's lot and the right of way at least 4 feet, and which would make the point of excavation in front of the garage, of which complaint is made, some 15 feet or more from the line of the right of way separating it from plaintiff's lot. The answers, therefore, not only denied plaintiff's title of the portions of his alleged lot that he claimed were damaged, but likewise affirmatively pleaded that the county of Laurel was the owner, at least for highway purposes, of that portion of his lot that he had wrongfully appropriated, which, as we have seen, included the ground upon which the garage was located. Each defendant likewise claimed nonliability because the work was done exclusively by the state highway commission under its plans and specifications and according to its direction. Following pleadings made the issues and upon trial the court directed a verdict for the contractor, but submitted to the jury the case against the county, and it returned a verdict in favor of plaintiff for the sum of $150, upon which judgment was rendered. Its motion for a new trial was overruled, followed by the prosecution of this appeal.

A motion has been made to dismiss the appeal because the amount involved is below the jurisdiction of this court as prescribed in section 950-1 of the 1930 Edition of Carroll's Kentucky Statutes. But the same statute confers jurisdiction on this court, regardless of the amount involved, when "the title to the land or the right to an easement therein * * * is directly involved." The county insists, in resistance of that motion, that either the title to land or an easement

therein, is involved in the action, dependent upon the character of right that the public originally acquired when the right of way was obtained, and that the issues as formed by the pleadings in the case directly present that question, and which contention, we conclude, is supported by numerous adjudications of this court, some of which are, Ponder v. Lard, 102 Ky. 605, 44 S. W. 138, 19 Ky. Law Rep. 1649; Illinois Cent. R. Co. v. Major (Ky.) 121 S. W. 646 (not elsewhere reported); Cook v. Rockhouse Realty Co., 159 Ky. 710, 169 S. W. 480; Frazier v. Ison, 194 Ky. 550, 240 S. W. 39, and cases cited in those opinions. Those cases declare that where plaintiff seeks damages for injuries to realty and asserts title in himself, and defendant merely denies it, but does not claim or assert title in himself (but controverts the damages only), then neither the title nor any easement right is involved so as to give this court jurisdiction under the provisions of the statutes supra. But where plaintiff in such actions asserts title or right in himself which is denied by defendant, accompanied with an affirmative averment that defendant owns the land or right in question, then the title or the claimed easement is involved so as to be comprehended by the section of the statute, and in which case this court would have jurisdiction of an appeal by the unsuccessful party from any judgment rendered in the cause. Our recitation of the conditions of the pleadings in this case shows them to be such as to involve the title to or easement right in the contested strip of land upon which is located plaintiff's garage, and from which it follows that the motion to dismiss the appeal should be and it is overruled.

The court assumed in its instruction to the jury that plaintiff's garage was located on his lot and that he owned the title thereto, and which was tantamount to holding that plaintiff had not appropriated any portion of the original highway and added it to his lot. He had denied such appropriation in his reply, and in another paragraph thereof pleaded adverse possession, the latter of which was appropriately denied and was also sought to be avoided upon the ground that neither plaintiff nor any of his predecessors in title had ever given notice to the county of any such alleged adverse possession, but which section 2547 of our Sta-

tutes, supra, expressly requires shall be done before adverse possession starts or commences. Plaintiff seeks to avoid that statute by insisting that it was repealed by section 4356s, but which contention was expressly overruled by us in the case of Mills v. Dawson, 197 Ky. 518, 247 S. W. 764, in which we held that the alleged repealing statute relied on was unconstitutional and invalid because violating the provisions of section 51 of our fundamental law (constitution). The issue, therefore, of plaintiff's wrongful appropriation of a part of the highway and annexing it to his lot was an appropriate and vital one in the case, and the court erred in assuming that plaintiff legally owned the ground upon which his garage was located, since there was overwhelming testimony in the case that such wrongful appropriation of the right of way had been made by plaintiff or his predecessors' in title. Some of the witnesses testified that he was warned, and expressly informed when he constructed his garage, that he was building it in the right of way of the old road, and that issue should at least have been submitted to the jury by an appropriate instruction. None was asked, however, but the objection to the instruction that was given, and to which we have referred, assumed plaintiff's ownership of any appropriated portion of the highway, if it had been done, when there was, as we conclude, preponderating evidence to the contrary. If it were true that such an appropriation was made by either plaintiff, or a preceding owner of his lot, then practically the sole element of damages becomes eliminated from the case.

The other alleged element to which plaintiff's testimony was directed related to the destruction of his sewer pipe under the surface of the old road before the concrete improvement. The privilege to construct it he claims to have obtained orally from a former county overseer of that section of the old road. In the first place, an overseer possesses no authority to grant such a license; and, in the second place, if the right or permission had been obtained from the only public agency having the right to give it (the county or fiscal court), it was not irrevocable, since such license privileges are always given subject to alteration, surrender, and even revocation when the interests

of the public require it. When authoritatively granted they are subject to the right, under the police power of alteration or revocation when in the exercise of the same power it is necessary for the benefit of the public. See Louisville Gas & Electric Co. v. Commissioners of Sewerage, 236 Ky. 376, 33 S. W. (2d) 344; Union Light, Heat & Power Co. v. Louisville & N. R. Co., 257 Ky. 761, 79 S. W. (2d) 199, 202, and other cases cited in those opinions. In the latter case, touching the point under consideration, we said: ''Such rights as appellant has in the streets are subordinate to the paramount rights of the public, and are held by appellant with full knowledge of these rules.'' Excerpts from the other opinions are unnecessary, since they are to the same effect, and which eliminates from the case entirely plaintiff's claim for any damages for the destruction of his sanitary sewer pipe in making the excavation for the concrete highway in front of plaintiff's lot. If plaintiff's garage is located upon ground embraced by the right of way of the county, as originally acquired, all alleged damages claimed to have resulted to it on account of the excavation complained of would likewise become eliminated from the case, and which would leave practically nothing to sustain the action.

Moreover, the proof shows that between the edge of the concrete on the side next to the garage, and the wall of the excavation immediately in front of it, is a distance of 8 or 10 feet and that plaintiff would at any time be granted the privilege of constructing thereon an entrance into his garage, if he desired to do so, with a sufficient culvert in the ditch adjacent to the embankment to take care of the drainage on that side, all of which could be done at comparatively nominal cost.

The case does not impress us as a genuinely meritorious one. It is but an exhibition, like numerous others brought to this court, of a disposition on the part of adjacent land owners to public highways to, not only refuse to co-operate in the construction and maintenance of such arteries of trade and commerce—highly beneficial to the prosperity of the state—but, on the contrary, manifests a disposition to obstruct and impede the building of such essential improvements by

demanding and exacting, and most frequently obtaining, exorbitant and unmeritorious compensation for rights of way, where none previously existed, and for alleged damages growing out of methods of construction, and all of which is done in the face of the fact, universally known, that the construction of a high type highway along or through premises, almost invariably enhances their value, and scarcely ever diminishes it below the point of enhancement. Juries in such cases appear to be indifferent to such universally known and always proven facts, and they unhesitatingly return verdicts in such cases in apparent disregard of the equally well-known fact that satisfaction must be made from revenues derived from taxation. A more loyal attitude toward the acquisition of such improvements would not, we are convinced, entail any actual loss or damage to such landowners, and at the same time it would contribute to increased improvements and an enlargement of the public benefits flowing therefrom.

For the reasons stated, the judgment is reversed, with directions to sustain the motion for a new trial, and for proceedings consistent with this opinion.

Whole court sitting.