### SOUTHERN BELL TEL. & TEL. CO.

#### v.

#### COMMONWEALTH et al.

Court of Appeals of Kentucky.

Feb. 12, 1954.

Rehearing Denied April 23, 1954.

Thomas J. Wood, Stites, Wood, Helm & Taylor, Louisville, for appellant.

William E. Berry, Louisville, J. D. Buckman, Atty. Gen., Armand Angelucci, Asst.

Atty. Gen., C. J. Waddill, Asst. Atty. Gen., for appellees.

DUNCAN, Justice.

This proceeding was filed prior to July 1, 1953, as an Agreed Case under Section 637, Carroll's Civil Code, which is now embodied in KRS 418.020. The petition seeks a determination of whether or not, under the agreed facts, Southern Bell Telephone and Telegraph Company is required by-law to bear the expense of the relocation of its poles, wires, and conduits, now situated upon and in certain public highways, made necessary by the construction of the Watterson Expressway. The lower court decreed that the cost of such relocation should be paid by appellant.

In 1886, the Legislature of Kentucky created the Ohio Valley Telephone Company as a corporation, with power and right to construct and maintain telephone lines over and under the highways, streets, and alleys of the Commonwealth, with the proviso that before constructing its lines in the city of Louisville it should obtain the consent of the council of that city. The rights so granted were state-wide in extent and unlimited as to time. Immediately after adoption of the Act, the Ohio Valley Telephone Company obtained the consent of the General Council of the city of Louisville and proceeded to construct its lines over the public highways in the city of Louisville and various other parts of the Commonwealth.

In 1900, the Ohio Valley Telephone Company was consolidated with the Cumberland Telephone and Telegraph Company, another Kentucky corporation, the consolidated company being known as Cumberland Telephone and Telegraph Company. In 1926, the latter company conveyed all of its properties, rights, and franchises to Southern Bell Telephone and Telegraph Company. Since that time, Southern Bell has continued to own, extend, maintain, and operate its telephone lines in Kentucky.

The Watterson Expressway is a new limited access Federal-aid highway. It has been planned and is being constructed to

connect U. S. highways 42, 60, 31E, and 31W in such a way as to enable traffic to proceed from either of said highways to the other without going through the business section of the city of Louisville. One-third of the right of way cost and one-half of the construction cost are to be paid by the Federal government. The new highway crosses, at various points, numerous established highways upon which Southern Bell has for many years maintained its poles, wires, and conduits. At certain points, it includes for a short distance portions of previously established public highways. At such points, it is necessary that the telephone company's facilities be removed and relocated in order to construct the new Expressway.

The rights conferred on the Ohio Valley Telephone Company were not confined to any particular highway or highways. Its franchise related to highways in existence at the time of the grant and those thereafter constructed. The Act specifically provided that the lines and poles should be constructed, equipped, and maintained over or under the highways, streets, and alleys "so as not to obstruct the same." The parties are not in complete agreement concerning the exact nature of the property right conferred by the legislative grant, but we do not think this question is material. Whatever its nature, whether real, personal, or mixed, tangible or intangible, it amounts to an irrevocable, perpetual legislative franchise to maintain poles and lines upon any or all highways in the Commonwealth in such a manner as to afford no obstruction to public use.

Appellant contends that under the terms of its franchise, it is not required to relocate its facilities at its own expense, and the state has no authority under the exercise of its police power to impose such a requirement. The Commonwealth contends that the franchise, properly construed, requires such removal and that in any event the Department of Highways, under the police power conferred upon it, may require removal and relocation at the expense of the company.

We think, fairly and reasonably construed, the removal and relocation of the poles and lines at appellant's expense may be justified under the specific provisions of the grant. The term "so as not to obstruct the same" unquestionably relates to the obstruction of improvement, construction, and reconstruction of the state's highways as well as obstruction of travel upon completed highways.

We take judicial notice of the fact that most of the highway construction in Kentucky has occurred during the past thirty years. If we accept appellant's narrow construction of its legislative franchise, the state would have been required to locate or relocate its principal roads built within that time with the primary object of avoiding interference with appellant's facilities rather than conforming to the convenience and safety of the traveling public. The necessary alternative to location of its roads so as not to affect appellant's facilities would have been that the state should pay for the removal and location of the poles and lines which interfered with construction of new highways or improvement or reconstruction of existing roads. If construed as requiring removal and relocation at the expense of the state, the franchise was in violation of Article II, § 33, of our Third Constitution, which was carried over into Section 177 of our present constitution, and provided:

"The credit of this Commonwealth shall not be given or loaned in aid of any person, association, municipality, or corporation."

Aside from the express provisions of the grant, we think there is a clearly implied condition that appellant may be required to remove and relocate its facilities when such removal and relocation are in the interest of public convenience or safety. In New York City Tunnel Authority v. Consolidated Edison Co. of New York, Inc., 295 N.Y. 467, 68 N.E.2d 445, 448, the court considered the requirement imposed upon the defendant company by the appropriate

agency of the city of New York that the company relocate its public utility facilities at its own expense so as not to interfere with the construction of approaches to a tunnel which was being built. In holding that the public utility was required to bear the expense of such removal and relocation, the court said:

> "The 'fundamental common-law right applicable to franchises in streets' is that a utility company must relocate its facilities in the public streets when changes are required by public necessity. (Citing cases.) 'Although authorized to lay its pipes in the public streets, the company takes the risk of their location and is bound to make such changes as the public convenience and security require, at its own cost and charge. (Citing cases.) All these cases are to the point, that these public service corporations maintain their rights in the streets, subject to reasonable regulation and control, and are bound to relocate their structures at their own expense whenever the public health, safety, or convenience requires the change to be made.'"

The rule has been approved by this Court in Union Light, Heat & Power Co. v. Louisville & N. R. Co., 257 Ky. 761, 79 S.W.2d 199; Louisville Gas & Electric Co. v. Commissioners of Sewerage of Louisville, 236 Ky. 376, 33 S.W.2d 344; and Louisville City R. Co. v. City of Louisville, 12 Bush. 415, 71 Ky. 415. Many other authorities from other state and Federal courts might be cited in support of the principle which is applied in these cases.

The appellant further contends that the police power of the Commonwealth may not be used to further a Federal-aid project such as the Watterson Expressway. It is insisted that in requiring relocation of appellant's property the state is merely acting as the agent or representative of the Federal government and is, therefore, invoking its police power in behalf of another. We are unable to agree with this contention.

■ A review of the legislative history of the Federal-aid highway Acts will show that not only did Congress not intend for the various states to act or become agents of the Federal government but also the Federal government has never taken over the ownership, jurisdiction, or control of the highways of which the project under consideration is a part. Federal-aid legislation merely recognizes a national interest in the improvement of public highways owned and built by the states and their subdivisions and provides a measure of aid to the states in meeting the cost of improving and constructing such highways. The Federal legislation has not taken away or attempted to assume state power and control over the highways. Title to the right of way is taken in the name of the state, and under the Federal-aid Acts, the states are required to supervise construction and are responsible for the maintenance of Federal-aid highways.

The judicial construction of Federal-aid legislation has consistently been that the mere fact the United States contributes to or assists states in the building of roads does not take from or limit the states in the exercise of their police power or the right to control and regulate the use of their roads. Whitney v. Fife, 270 Ky. 434, 109 S.W.2d 832; State ex rel. Daniel, Attorney General v. John P. McNutt, 180 S. C. 19, 185 S.E. 25; and South Carolina Highway Department v. Barnwell Bros., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734.

It is also insisted that the provisions of appellant's franchise constitute a valid contract with the state and that enforcement of the demand that appellant remove and relocate its facilities at its own expense amounts to impairment of the terms of a contract. We have previously indicated that we do not think the terms of the franchise, express or implied, are inconsistent with the state's demand. We also think that if our construction was otherwise the state might nevertheless enforce the removal and relocation requirement under authority of its police power.

■ It is well established that a state may not by contract or otherwise abdicate or bargain away its police power. In the

case of Atlantic Coast Line R. Co. v. City of Goldsboro, North Carolina, 232 U.S. 548, 34 S.Ct. 364, 368, 58 L.Ed. 721, it was said:

"For it is settled that neither the 'contract' clause nor the 'due process' clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise. * * * And the enforcement of uncompensated obedience to a regulation established under this power for the public health or safety is not an unconstitutional taking of property without compensation or without due process of law."

The relocation, construction, or reconstruction of highways clearly relates to the safety, security, and general welfare of the citizens of the state, and all steps taken in the furtherance of these objects are matters within the police power of the state. This power has been conferred upon the State Highway Department, and we think it is clearly within its power to require the appellant to remove and relocate its facilities so as not to interfere with the construction of the road under consideration.

Appellant also contends that the requirement that it relocate its facilities at its own expense is discriminatory because of the fact that the Federal government, under legislative authority, bears the expense of relocation of railroad facilities within the right of way of any Federal-aid highway. Upon this premise, it is insisted that telephone companies and other utilities are victims of discrimination and are denied equal protection of the law in violation of provisions of the Federal and state constitutions.

It is unnecessary to point out what we conceive to be valid distinctions between railroad companies and other utilities in requiring relocation and removal of their facilities at their own expense. Whether discriminatory or not, it cannot be insisted that the state is a participant in the payment of the cost of removing and relocating railroad facilities. That the Federal government has made special provision for railroad companies does not limit or restrict the state in the rights which it asserts in this action.

The judgment is affirmed.