No. 45,526

City of Wichita, *Appellee,* v. Kansas Gas and Electric Company,
*Appellant.*

(464 P. 2d 196)

Opinion filed January 24, 1970.

*Ralph Foster,* of Wichita, argued the cause, and *Stanley Garrity,* of Wichita, was with him on the briefs for the appellant.

*William C. Farmer,* of Wichita, argued the cause, and *John Dekker,* of Wichita, was with him on the briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an action brought by plaintiff-appellee (City of Wichita) for a declaratory judgment to judicially determine whether defendant-appellant (Kansas Gas and Electric Company) is legally entitled to reimbursement from the city for the expense of relocating a power transmission line from its present location on the right-of-way of the Wichita Drainage Canal to another location on the same right-of-way. The relocation of the power transmission line is made necessary by the proposed use of the right-of-way for highway purposes in the construction of Interstate Highway 35-W.

Facts were stipulated by the parties and the action was submitted to the trial court for determination as a matter of law. Judgment was entered for the city and defendant (Kansas Gas and Electric Company) has appealed.

In 1925, the appellee acquired by condemnation proceedings a canal right-of-way for the purpose of "widening and otherwise improving the Wichita Drainage Canal." In 1926, the appellee, by negotiation, acquired deeds to the tracts of land located in the canal right-of-way, confirmatory of the condemnation proceedings. Since 1925 the appellee has used the right-of-way for drainage canal purposes. In addition to drainage canal usage, the public has had free access to the canal right-of-way area and has used various portions of it for pedestrian and vehicular traffic, and for recreational and other public uses.

Appellant is an electric public utility operating in Sedgwick County and other counties of Kansas pursuant to authority of the State Corporation Commission of Kansas.

In 1947, the appellee, by Ordinance No. 14-844, granted a franchise to appellant for the furnishing of electricity to the city and its electric consumers and "to construct, maintain and operate in present and future streets, alleys and *public places* in the City of Wichita, Kansas, electric light and power lines." (Emphasis supplied.)

Section 3 of the franchise ordinance provided for the manner of constructing power lines and transmission facilities. It provided in part:

". . . Whenever practicable, poles shall be placed in the alleys; or, when in the street, shall be located, whenever practicable, on the lot lines and just inside the curb line or as near the side of the curb line as same can properly be placed; and all work of construction of lines, poles, wires, cables, pipes and conduits shall be done under the direction and supervision of the governing body of the City or its duly authorized representatives, provided the governing body of the City may, in its discretion, vary any of the above provisions and requirements whenever in the judgment of such body, public necessity may require; and provided further, that in making any and all excavations and work of improvement and in exercising any rights and privileges under this franchise same shall be done in conformity to the ordinances of the city of Wichita, passed by the said City in the reasonable exercise of its police power."

Section 4 of the franchise ordinance provided that appellant would indemnify and hold the appellee harmless from any and all claims, costs, damages, expense or liability which may be occasioned by the occupancy of the streets, alleys and public grounds in the city by the properties and works of appellant.

The franchise was granted until July 15, 1967, and on April 7, 1964, a subsequent Ordinance No. 27-670 was passed and approved granting a franchise until March 1, 1984. The parties stipulated that the second franchise is identical with the first (No. 14-844) in all respects pertinent to this litigation.

After 1947 appellant furnished electricity to the city and consumers in the city and has used public property including streets and alleys for the location of its transmission lines pursuant to the franchise.

On October 3, 1950, the appellee, acting through its governing body, approved the location of the transmission line in question. The journal of the city commission proceedings reflects the following:

"Request from the Kansas Gas and Electric Company for approval of a proposed route for a 66 kv line to come into Wichita from the new Murray Gill plant to be built south of Wichita, presented. It is proposed that this new line come along the canal at some point south of Harry Street and then north along the canal terminating at Central. City Manager approved the request providing the line is built on the east side of the canal. Jump moved that the request be granted as recommended by the City Manager. Motion carried."

As to the installation of the transmission line the parties stipulated:

"7. *Pursuant to* said resolution set out in Paragraph 6 above, KG&E did construct and install poles and electric lines along and over the Canal right-of-way, said installation being completed and in service on November 12, 1951, at a cost of $93,622. A map showing the installation route and present location

thereof is attached hereto marked Exhibit 'F' and made a part hereof. Said transmission line and all structures thereof are located wholly upon the property included in the 1925 condemnation action heretofore mentioned." (Emphasis supplied.)

For the purpose of the construction and maintenance of a connecting link of Interstate 35-W, and in contemplation of the provisions of the Federal Aid Highway Act of 1956 and 1963, and pursuant to K. S. A. 68-401, *et seq.*, the appellee and the State Highway Commission entered into an agreement on December 9, 1958, and a supplemental agreement on December 23, 1963. Under the terms of the agreement, the location of the Interstate 35-W right-of-way was fixed and the appellee agreed to obtain, in advance of construction, all of the right-of-way, construction easements and access rights called for by the project; and that it would move or cause to be moved or adjusted "all existing fences, structures, pole lines, pipe lines, meters, manholes, other utilities and encroachments, publicly or privately owned, which may be necessary to the construction of the project in accordance with approved plans."

In 1963, appellee instituted condemnation proceedings to acquire sufficient rights in portions of the canal right-of-way to construct the highway thereon. The appellant was not made a party to these proceedings.

The construction of the highway required relocation of the appellant's transmission line to another portion of the canal right-of-way. Appellee requested appellant to relocate the transmission line in question and appellant refused to relocate at its own expense; thus giving rise to this controversy.

In general, appellant supports its position by proposing two theories. First, it claims that the action of the appellee in 1950, in response to appellant's request for approval of a proposed route for its transmission line along the canal, amounted to a resolution from which appellant acquired rights superior and distinct from the ordinary construction easement rights, stemming from its 1947 franchise. Second, appellant claims the canal right-of-way does not fall within the concept of "alleys, streets and public properties," specified as available for the construction of utility facilities in the franchise. Thus, appellant contends it secured by the "resolution" an interest in the right-of-way which required negotiated compensation or condemnation.

Before delving into the basic issues involved in this appeal, we shall consider the attack of appellant on the trial court's findings of fact. Although, as we have noted, facts were stipulated, appellant challenges the findings of the trial court, based on the stipulation, on two grounds. First, it is contended the trial court's findings conflict with the stipulation of the parties with respect to the significance to be attached to the resolution and, second, it is argued the trial court referred to and relied upon a letter written by appellant to the appellee, which was not received in evidence.

The trial court made five findings of fact. In the first of which the stipulation of the parties was made a part of the findings and incorporated by reference. The conflict claimed by appellant arises from language used by the parties in the stipulation to the effect that the transmission line was constructed "pursuant to said resolution"; whereas the import of the trial court's findings of fact is that the line was built pursuant to the general franchise which appellant had with the city. Appellant argues that the line could not have been built pursuant to both the resolution and the franchise, and thus an irreconcilable conflict exists between the findings of the court and the stipulation by the parties.

Appellant insists the trial court was bound by the language of the stipulation and thus compelled to find the line was constructed pursuant only to the resolution. Appellant attaches importance to this point by making the further contention that by virtue of the resolution an interest in the right-of-way was secured which was separate, distinct, and superior to a right devolving from the franchise. This subject will be discussed in a subsequent chapter of our opinion.

The appellee meets the contention of conflict between the stipulation and findings by asserting that both the franchise and resolution were essential prerequisites before appellant could proceed.

The excerpt from the journal of the city commission, which was referred to as a "Resolution" by the parties in their stipulation of facts, reflects that appellant, relying on its franchised authority to construct transmission lines in streets and public places, requested approval of a proposed route for the line in question along the canal. The journal of proceedings merely shows the city approved the request and specified the location of the line with respect to the canal. We think the procedure employed was clearly contemplated and provided for by Section 3 of the franchise enjoyed by appellant.

While the franchise authorized the construction and operation of power lines in streets and public places, Section 3 specifically required that all work and construction be done under the direction and supervision of the governing body of the appellee or its duly authorized representative.

We are mindful of the rule cited by appellant that a trial court cannot make findings of fact different from those agreed to by the parties. (*Woolverton v. Johnson,* 69 Kan. 708, 77 Pac. 559.) However, the question here is what did the parties agree.

We believe appellant attaches a meaning to the words "pursuant to" as used in the stipulation beyond that contemplated by the parties at the time or by the trial court in entering its findings.

The minutes of proceedings disclosed by the journal show that, whether the action taken was denominated a resolution, permission or approval is of little moment, since it merely amounted to the passing of a motion by the city commission on the request of appellant by which the proposed route along the canal was approved, provided the line was built on the east side of the canal.

The contention of appellant that a letter not in evidence served as a basis for a finding of the trial court is with referencee to finding of fact No. 3 which reads:

"By the letter of K.G.&E. to the City in September, 1950, K.G.&E. sought approval of the City for permission to put its own lines on the Canal Route and represented to the City that such approval was being sought as was provided in its franchise."

In this connection the journal entry of judgment reflects the following:

". . . During the course of said trial, the plaintiff submitted to the Court for its consideration a letter dated September 11, 1950, from the Division Manager of the Kansas Gas & Electric Company to Mr. M. P. Jones, City Manager of the City of Wichita, and a letter dated October 5, 1950, from Mr. C. C. Ellis, City Clerk, to Mr. Sam Brolund, Division Manager of Kansas Gas & Electric Company. These two exhibits were considered by the court but inadvertently were not marked as Exhibits. No objection to the court giving consideration to these letters was made by the defendant."

Appellant argues that if the letters referred to had probative significance they should have been included in the stipulation; that the parties had agreed in the stipulation that construction was pursuant to the resolution; that the production of the letters at oral argument before the trial court was a belated attempt to change the stipulated fact the construction was pursuant to the

resolution; and that the trial court erred in considering either of the letters.

The letters referred to are identified as documents, not marked as exhibits, and included in the record on appeal. The letter of September 11, 1950, addressed to the city manager, describes the proposed transmission line and points out advantages to both the appelleee and appellant of a location along the canal. From the form of the letter it may be inferred that appellant was seeking approval of the proposed location for its new transmission line.

The letter of October 5, 1950, referred to in the journal entry, was the means by which the city clerk informed the division manager of appellant that the city commission had acted on the request of appellant and approved the proposed route, provided the line was built on the east side of the canal.

Without determining whether a waiver resulted from failure to object to the trial court's consideration of the letters, we do not hesitate to say the matter arising as it did could not amount to reversible error. The minutes of the city commission were before the trial court and clearly disclosed that a request was before the commission and was approved with the proviso that the line be constructed on the east side of the canal. At most, the letters could have served only as background and explanation for the evidence already before the court.

Appellant complains that it was not made a party to the condemnation suit and no notice was served upon it; that as an occupant of a particularly assigned area of the canal right-of-way it was required to be made a party under the provisions of G. S. 1961 Supp. 26-202 (Repealed, Laws of 1963, Ch. 234, Sec. 103), the statute controlling condemnation procedure at the time. Appellant cites *Walker v. Hutchinson City,* 352 U. S. 112, 1 L. Ed. 2d 178, 77 S. Ct. 200 (reversing *Walker v. City of Hutchinson,* 178 Kan. 263, 284 P. 2d 1073); *Ash v. Gibson,* 146 Kan. 756, 74 P. 2d 136, and *Cities Service Gas Co. v. Riverside Drainage Dist.,* 137 Kan. 410, 20 P. 2d 520.

The position of appellant cannot be sustained for two reasons:

First, it is readily apparent from the terms of the stipulation that the parties agreed that the rights of appellant should be determined in this declaratory judgment action and if it is finally adjudicated that appellant is entitled to reimbursement, then it was stipulated in detail in Paragraph No. 14 of the stipulation how the amount of

such reimbursement should be arrived at by the parties. Thus, by reason of the stipulation, joinder of appellant in the condemnation proceeding is wholly immaterial to the issues in this action.

Secondly, in *Walker v. City of Hutchinson*, supra, Walker owned a fee in the land in question, was made a party to the action, and was named in a publication notice under G. S. 1949, 26-202. The decision rested on the constitutionality of the notice served upon Walker.

Likewise, in *Cities Service Gas Co. v. Riverside Drainage Dist.*, supra, the Gas Company owned the land sought to be condemned, where—as here—appellant is on the canal right-of-way only through authority given it by appellee.

*Ash v. Gibson*, supra, dealt with the proposition that the general powers delegated by statute to municipalities to exercise control over streets are, nevertheless, subject to the limitation that ordinances (load limitations of gasoline transports) must not be inconsistent with the laws of the state or in contravention of state policy declared by statute. No such issue is framed by the factual situation in the instant case.

The controlling issue in this appeal is whether the resolution of October 5, 1950, established rights in the appellant, that were of a quality requiring reimbursement for the relocation of its installations.

In its brief appellant candidly admits:

"This defendant, in common with all other utilities in the state, recognizes as settled in this state the law that where a utility uses public streets or alleys to conduct its business, along with and as a part of the public, under a general franchise to supply utility services, the municipality may require the uncompensated relocation of those facilities in the public interest. *Wichita Water Company v. City of Wichita*, 98 Kan. 256, 158 P. 49. In addition, the defendant's franchise recognizes the right to exercise police powers with respect to streets and alleys by *ordinance* (R. 25). The franchise is silent with respect to other places in the possession and under the control of the plaintiff. And, the law is different."

In other words, there is no dispute concerning the general rule that when a utility locates its facilities in the public way, it does so with the legal understanding that its interest in the public way is subordinate to the superior right of the city under its police power to require relocation of the facilities at the user's own expense. (36 Am. Jur. 2d, Franchises, § 42, p. 768.) The rule is one of almost universal acceptance and is compelled by the decision of the

United States Supreme Court in *New Orleans Gas Co. v. Drainage Comm.,* 197 U. S. 453, 49 L. Ed. 831, 25 S. Ct. 471.

While application of the rule in the precise context presented here has not been determined, principles established by the rule are in harmony with the holdings of this court in *Water Co. v. City of Wichita,* 98 Kan. 256, 158 Pac. 49, and *State v. Mo. Pac. Rly. Co.,* 33 Kan. 176, 5 Pac. 772, and with language found in an extensive discussion of the police power—eminent domain dichotomy found in the opinion and concurring opinion in *Ray v. State Highway Commission,* 196 Kan. 13, 410 P. 2d 278, cert. den, 385 U. S. 820, 17 L. Ed. 2d 57, 87 S. Ct. 43.

Appellant contends there are unique circumstances attending the facts of this case which make the ordinary rule regarding streets and alleys inapplicable.

At this juncture of its brief, appellant reasserts its argument that its right-of-way was granted by special resolution and because of the further attending circumstances; the canal right-of-way not being a street or alley; the designation of a particular location (east of the canal) and the fact that the line did not interfere with use of the canal at the time, appellant claims a quality of interest was acquired not subject to expropriation under the general rule.

We have already stated our view that appellant's rights stem from its franchise, rather than the alleged resolution in our discussion of the trial court's findings.

Appellant attempts to raise the quality of its right by suggesting the resolution amounted to a grant of right-of-way under the provisions of G. S. 1949, 13-433 (Repealed, Laws of 1963, Ch. 90, Sec. 1) which reads:

"To grant the right of way for the erection of telegraph, telephone or electric-light poles and wires along and upon the streets, alleys and public grounds of the city, and change, modify and regulate the same; and may require any cables or wires now or that may be hereafter strung or erected or be placed underground."

Appellant contends a right-of-way could be granted under 13-433 by means of a simple resolution. Assuming such could have been accomplished, appellant would receive no comfort. The plain language of the statute reserves in the city the authority to "change, modify and regulate." We believe the decision in *Kansas Power & Light Co. v. City of Great Bend,* 172 Kan. 126, 238 P. 2d 544 (1951) entirely lays to rest the contention of appellant in this regard.

Kansas Power & Light Co. was a franchised utility of the City of Great Bend in the identical relationship as appellant is to appellee. We find this statement in the opinion.

"The Kansas Franchise Act (G. S. 1949, 12-2001) provides the only method by which a city may grant to a public utility such as appellant herein the right to use the public streets in carrying on its private business. . . ." (p. 131.)

The Franchise Act (G. S. 1949, 12-2001, now K. S. A. 12-2001) in effect at the time of the resolution provided:

"*First.* All contracts granting or giving any such original franchise, right, or privilege, or extending or renewing or amending any existing grant, right, privilege, or franchise, shall be made by ordinance, and not otherwise."

G. S. 1949, 13-433 and 434 (Repealed, Laws of 1963, Ch. 90, Sec. 1) authorize cities to make certain grants to public utilities but in so doing the legislature established the procedure which must be followed in making such grants by the enactment of G. S. 1949, 12-2001 (now K. S. A.).

In other words, this court has stated that the franchise act provides the only method by which a utility, such as appellant, may acquire the right to use a street and the legislature declared in the franchise act that such a grant shall be by ordinance, and not otherwise. Appellant could not have acquired the right it claims by means of resolution. Appellant cites *Cow Creek Valley Flood Prevention Ass'n v. City of Hutchinson,* 166 Kan. 78, 200 P. 2d 299. The case does not involve the granting of a utility easement or franchise but merely holds that the city may initiate condemnation proceedings for the acquisition of a right-of-way under G. S. 1945 Supp., 12-635 (now K. S. A. 12-635), either by ordinance or resolution. The decision has no application to the issue before us.

Appellant contends the canal right-of-way, not being a street or alley, its utility easement therein does not fall within the application of the rule of law which we have cited. In taking this position appellant ignores the "public places" provision in the franchise ordinance under which it was operating. The right to put its equipment "in public places" is authorized in Section 1 and "public grounds" is set out in addition to streets and alleys in the hold harmless provision set out in Section 4 of the franchise.

We further note the term "public grounds" is used in addition to streets in the franchise act itself. In *Kansas Power & Light Co. v. City of Great Bend,* we find the following statement:

"It is apparent from the mentioned franchise act that it is a restriction upon the corporate powers of a municipality to grant to utilities the right to use the streets and *other public property* without first obtaining a franchise as therein provided. . . ." (p. 131.) (Emphasis supplied.)

We hold the canal route right-of-way in the instant case to be a "public place" or "public grounds" within the meaning of the Kansas Statutes and the Franchise Ordinance. Cases from other jurisdictions, dealing with the definitions of "public property," "public grounds" or "public places" in harmony with our holding here are: *The Steam Dredge No. 6,* 222 Fed. 576; *Bauer v. County of Ventura,* 45 C. 2d 276, 289 P. 2d 1; *Taschner v. Iowa Elec. L. & P. Co.,* 249 Iowa, 673, 86 N. W. 2d 915; and *Detroit Edison Co. v. Detroit,* 332 Mich. 348, 51 N. W. 2d 245.

The appellant claims it had rights prior to the proposed highway use of the canal right-of-way and that such rights were not revocable. In support of its position appellant cites cases from other jurisdictions and *Page v. Lydic,* 123 Kan. 122, 254 Pac. 316, holding that a license with an interest is irrevocable. Appellant asserts that it acquired such a right here arising out of the resolution which is independent of its rights under the franchise ordinance. The cases cited by appellant on this point do not deal with rights acquired by a utility, when franchised by a municipality in the context confronting us in the instant case. Nor can appellant's contention, that it acquired an irrevocable interest by reason of the designation of a specific location for its line, be sustained. The general rule dealing with the subject may be found in Vol. 2 Nichols', Eminent Domain, § 5.85, commencing at page 334.

A pertinent discussion of the obligation of utilities to relocate at their own expense, under circumstances similar to that existing here, may be found in *Port of N. Y. Auth. v. Hackensack Water Co.,* 41 N. J. 90, 195 A. 2d 1.

Accord with the case law dealing with the subject was indicated by this court in *Water Co. v. City of Wichita,* 98 Kan. 256, 158 Pac. 49. There it was stated:

"The decided cases go so far as to say that a city can not bargain away its powers to subject the grantees of franchises to further regulation and control as further public necessities may require. (citing cases.)" (p. 260.)

Appellant further claims that its right is constitutionally protected. It relies on *Panhandle Co. v. Highway Comm'n.,* 294 U. S. 613, 79 L. Ed. 1090, 55 S. Ct. 563, reh. den. 295 U. S. 768, 79 L. Ed.

1709, 55 S. Ct. 652. The case is not applicable here. Panhandle acquired a property right by securing easements from landowners and had laid its pipelines on such easements. Later the Kansas State Highway Commission acquired rights-of-way for highway improvements but did not obtain consent of Panhandle to cross or occupy its right-of-way. Panhandle denied the existence of authority in the Highway Commission to compel relocation of its pipelines at its own expense. In reversing a holding of the Kansas Supreme Court, in favor of the Highway Commission, the situation there was carefully distinguished by the United States Supreme Court from a utility easement existing in a public street or place, such as that in the instant case. In *Panhandle* we find the distinction stated thus:

"*New Orleans Gas Light Co. v. Drainage Commission*, 197 U. S. 453, and similar cases concerning pipes in public streets, are not controlling. In them the pipes were laid upon agreement, actual or implied, that the owner would make reasonable changes when directed by the municipality." (pp. 622, 623.)

Obviously, a distinction is to be made between facilities in public ways and those established on private land or on easements, such as owned by Panhandle.

In the instant case appellant still has its franchise and the right to use the canal route for its line. Relocation of its line does not constitute an invasion of the constitutional rights of appellant. Other cases pointing out the distinction between the instant case and *Panhandle Co. v. Highway Comm'n.*, supra, are *Port of N. Y. Auth. v. Hackensack Water Co.*, supra; and *City of Macon v. Sou. Bell T. & T. Co.*, 89 Ga. App. 252, 79 S. E. 2d 265.

Finally, the appellant takes issue with the conclusion of the trial court that the reimbursement policies of the federal government pursuant to certain provisions of the Policy and Procedure Memorandum of the Federal Bureau of Public Roads are of no consequence in the determination of the duty of the city to the exercise of its police powers.

Here again, appellant bases its argument on the premise that it had secured a special interest which brought its claim within the reimbursement for utility relocation provision of the Policy and Procedure Memorandum. Appellant argues it is entitled to reimbursement because its interest falls within the contemplation of the term "or other property interest" of Paragraph 3a (1) of the Policy and Procedure Memorandum which reads:

"Where the utility has right of occupancy in its existing location by reason of holding the fee, an easement or other property interest."

Our task is not to define the meaning of the language found in the Policy and Procedure Memorandum but only to determine the liability of appellee. As we have previously indicated, the action of the city commission in approving appellant's request to route its line along the canal, provided it used the east bank, gave appellant no special property interest.

An examination of decisions from other jurisdictions and consideration of the policy of this state, as expressed by statute and declarations of this court, which we have noted, compel our concurrence with the conclusion reached by the trial court.

In *Southern Bell Tel. & Tel. Co. v. Commonwealth*, (Ky.), 266 S. W. 2d 308, the utility involved claimed reimbursement for relocation of facilities necessitated by the construction of a new limited access federal-aid highway. In determining the utility was not entitled to reimbursement the Court of Appeals of Kentucky said:

"The judicial construction of Federal-aid legislation has consistently been that the mere fact the United States contributes to or assists states in the building of roads does not take from or limit the states in the exercise of their police power or the right to control and regulate the use of their roads. *Whitney v. Fife*, 270 Ky. 434, 109 S. W. 2d 832; *State ex rel. Daniel, Attorney General v. John P. McNutt*, 180 S. C. 19, 185 S. E. 25; and *South Carolina Highway Department v. Barnwell Bros.*, 303 U. S. 177, 58 S. Ct. 510, 82 L. Ed 734." (p. 311.)

In *Department of Hwys. v. Southwestern Elec. Pow. Co.*, 243 La. 563, 145 So. 2d 312, the Supreme Court of Louisiana was confronted with the utility's contention it should not be compelled to bear the expense of relocation since the Department of Highways was entitled to recover ninety percent of all costs from the Federal Government. The Louisiana court answered the contention thus:

"We find no substance in this contention. Liability of plaintiff for the costs of removal of the utilities' facilities from the public way is not to be determined on its right under the Federal statute to obtain reimbursement of a large proportion of the costs from the United States. On the contrary, such liability is to be resolved by the laws of this state. The fact that our law may not prohibit reimbursement of the utilities has nothing to do with the plaintiffs' *liability* for reimbursement. We hold that no such liability legally exists." (p. 614.)

For the reasons assigned the judgment of the trial court is affirmed.