PATTERSON, Judge.
The Department of Revenue appeals a final judgment of the trial court declaring that section 212.059(5), Florida Statutes (1987)[1], as applied to Seminole Electric Cooperative, Inc., violates the Commerce Clause of article I, section 8 of the United States Constitution. We reverse.
Seminole Electric is a Florida corporation whose principal place of business is in Hillsborough County, Florida. It operates two coal-fired electric generating plants near Palatka, Florida. Coal used to operate the plants is purchased from mines located in Illinois and Kentucky, with shipments originating in either state and terminating in Florida. Pursuant to transportation contracts between Seminole Electric and third-party coal transportation companies, coal is transported by barges down the Ohio and Mississippi Rivers to the Gulf of Mexico and through the intercoastal waterway to Port St. Joe, Florida. The total mileage for transporting coal is 1,346 miles, with 167 miles, or 12.40713%, being within Florida.
Pursuant to section 212.059, Florida Statutes (1987), a services tax of five percent was assessed on these transportation services. This tax was computed on one-half of the transportation charges Seminole Electric paid under contracts with coal transportation companies, regardless of the number of miles the coal was transported in Florida. From July 1987 through December 1987, Seminole Electric paid $12,-264,137.20 in such transportation charges. Of that total amount fifty percent, or $6,132,068.60, was subject to tax. The total tax Seminole Electric paid, pursuant to authority granted to it to self-accrue tax, for the six-month period the tax was imposed was $306,603.43.
Seminole Electric applied for a tax refund under section 215.26, Florida Statutes (1987). This request was denied. After filing a protest and additional refund request, it then brought this action for declaratory relief and a refund of the tax.
The now-extinct “services tax” is both a sales and a use tax. Section 212.059 imposes a general tax on the sale or use of services consumed or enjoyed within the state. A sale is deemed to occur in the state when more than fifty percent of the service is performed within the state based on costs of performance. § 212.059(l)(b), *117 Fla.Stat. (1987). A use of a service is deemed to occur in the state when the sale of the service takes place outside the state and the service is consumed or enjoyed within the state. § 212.059(2), Fla.Stat. (1987). In regard to interstate transactions, a credit is provided for sales and use taxes paid to other states, thereby eliminating the imposition of double taxation. § 212.06(7), Fla.Stat. (1987). Under the laws of this state, the tax imposed under section 212.059 is constitutional on its face. See In re Advisory Opinion to the Governor, 509 So.2d 292 (Fla.1987).
A tax statute will withstand a Commerce Clause challenge if “the tax is applied to an activity with a substantial nexus to the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.” Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326, 331 (1977).[2] Seminole Electric contended, and the trial court determined, that the tax failed the last three prongs of the test. We disagree and hold that section 212.-059(5) meets the Complete Auto Transit test, as explained below.
FAIR APPORTIONMENT
This test measures whether a state taxes only its fair share of an interstate transaction. To meet this standard, a tax must be both internally and externally consistent. Goldberg v. Sweet, 488 U.S. 252, 261, 109 S.Ct. 582, 588, 102 L.Ed.2d 607, 616 (1989). An internally consistent tax is structured so that no multiple taxation results if every state imposes the identical tax. 488 U.S. at 261, 109 S.Ct. at 589, 102 L.Ed.2d at 617. Seminole Electric concedes that this tax passes the internal consistency test because there is no possibility of multiple taxation. A tax such as this can only be assessed by a state which is the point of origin or the point of termination of the interstate transportation service. This tax is then imposed on only one-half of the transportation charge. Any possibility of multiple taxation is further cured by the credit provision of section 212.06(7), as the trial court correctly ruled.
With respect to external consistency, the Goldberg Court stated that the “test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the instate component of the activity being taxed.” 488 U.S. at 262, 109 S.Ct. at 589, 102 L.Ed.2d at 617. Seminole Electric urges, and the trial court held, that section 212.059(5) fails the external consistency test because Florida does not prorate the tax based on the number of miles actually traveled through Florida versus the total number of miles in transportation. We do not agree.
This is not a tax on transportation per se. Neither is it a tax on the use of coal.[3] It is a tax on the use of a transportation service. When the point of origin and point of termination of transportation services are both within Florida, the tax is not computed on the number of miles traveled; rather, it is computed on the value of the service rendered. Thus, it is the benefit of the service (i.e., the shipping or the receiving of goods) upon which the tax burden falls. Under this application, the distance traveled or the mode of transportation is irrelevant. Seminole Electric derives a direct and substantial economic benefit by receiving coal to fuel its generating plants. That benefit which occurs in Florida is the direct product of the use of the transportation service. Accordingly, it is properly taxable where the benefit is enjoyed.
The parties have done exhaustive research but, because of the unique nature of this tax, have been unable to provide us with any authority upon which we can directly rely. Goldberg, however, is helpful in our analysis. There, the State of Illinois imposed a five percent tax on the gross charges of interstate telecommunications *118 originating or terminating in the state and charged to an Illinois service address. As in the case of our services tax, a credit was provided upon proof that another state taxed the same call. The Illinois tax was challenged on the ground that the state could tax only a fraction of the gross charge of each telephone call based on the miles the electronic signals traveled within Illinois.
In determining that the tax met the external consistency test and was fairly apportioned, the Court observed “that the external consistency test is essentially a practical inquiry.” 488 U.S. at 264, 109 S.Ct. at 590, 102 L.Ed.2d at 619. The Goldberg Court determined that administrative and technological burdens would not allow apportionment by the miles the electronic impulses traveled for each telephone call. The Court distinguished mileage apportionment cases involving vehicles travelling over measurable courses. However, the Court also reasserted its long-recognized view that the Constitution does not require states to use a single apportionment formula, and “therefore [we] have declined to undertake the essentially legislative task of establishing a ‘single constitutionally mandated method of taxation.’ ” 488 U.S. at 261, 109 S.Ct. at 588, 102 L.Ed.2d at 616 (quoting Container Corp. of America v. Franchise Tax Bd., 463 U.S. 159, 171, 103 S.Ct. 2933, 2943, 77 L.Ed.2d 545, 557 (1983)).
In the present case, the use tax is apportioned between the two states with nexus, the state of origin and the state of termination. The tax is measured by the value of each transaction and collected from the ultimate consumer — the consumer who enjoys the benefit of transportation services by shipping or receiving goods. We conclude that section 212.059(5) satisfies the external consistency test and is fairly apportioned.
SECTION 212.059 DOES NOT DISCRIMINATE AGAINST INTERSTATE COMMERCE
We next consider the third prong of the Complete Auto Transit test, the impact on interstate commerce. Section 212.059(5) provides:
—the same tax burden on out-of-state transportation services terminating in Florida as it does on the “Florida service provider” engaging in interstate commerce with a point of origin in this state;
—no preferences, credits, or other commercial advantages to Florida residents, consumers, or Florida service providers engaged in interstate commerce;
—a tax on the full sales price of transportation services where both the point of origin and point of termination are wholly within Florida;
—a tax on fifty percent of the full sales price of such services where either the point of origin or the point of termination are in Florida; and
—a full credit for taxes paid to other states on the same sale or use, pursuant to section 212.06(7), Florida Statutes (1987).
On its face, section 212.059(5) does not: discriminate against interstate commerce; place greater economic burdens on those outside the state; or grant an economic advantage to Florida residents. Therefore, it is not unconstitutional for any of these traditional reasons. See McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940); South Carolina Highway Dept. v. Barnwell Bros., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734 (1938).
THE TAX IS FAIRLY RELATED TO SERVICES PROVIDED BY THE STATE OF FLORIDA
The final prong of the Complete Auto Transit test requires that the measure of the tax be fairly related to the benefit of state services derived by Seminole Electric. This tax is a general revenue tax, as distinguished from a user fee which is imposed to support specific state facilities or services. In regard to a tax such as this, “[t]he only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devo *119 tion of taxes to public purposes. Commonwealth Edison Co. v. Montana, 453 U.S. 609, 623, 101 S.Ct. 2946, 2956, 69 L.Ed.2d 884, 897-98 (1981) (quoting Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 522, 57 S.Ct. 868, 878-79, 81 L.Ed. 1245, 1261 (1937)). Seminole Electric enjoys these benefits and must, as all others, pay its fair share. The final prong of the test is thus satisfied.
CROSS-APPEAL
Upon determining section 212.059(5) to be unconstitutional, the trial court held that the Department of Revenue should have assessed a tax of $76,081.37, based on the miles traveled in Florida. The court then ordered a refund of the tax paid less that amount. On cross-appeal, Seminole Electric contends that the trial court had no authority to, in effect, rewrite the statute and that a full refund was required. Our decision renders this issue moot, and we do not, therefore, address it on the merits.
Reversed.
DANAHY, A.C.J., and FRANK, J., concur.

. Section 212.059, Florida Statutes (1987), the services tax, was repealed, effective January 1, 1988. Ch. 87-548, §§ 13, 37, Laws of Fla.

. The parties agree that section 212.059(5) meets the "nexus” prong of the test, and we have not included it in our discussion that follows.

. Section 212.08(4)(a)(2), Florida Statutes (1987), exempts coal from use tax when it is used by a rural electric authority.